NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0728n.06

No. 09-2168

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 18, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| BEVERLY GROSE, fka Beverly Harrington, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CORRECTIONAL MEDICAL SERVICES, | ) | THE EASTERN DISTRICT OF |
| INCORPORATED; PATRICIA CARUSO, Warden; | ) | MICHIGAN |
| JOAN YUKINS, Warden; BRUCE CURTIS, Warden; | ) | |
| SHERILYN BUTLER; GOPAL K. SINGHAL; JANE | ) | |
| BURCH; CRAIG HUTCHINSON, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before:  BATCHELDER, Chief Judge; ROGERS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge.  Beverly Grose filed a lawsuit claiming that her Eighth Amendment rights were violated by the medical care she received in prison.  The district court entered summary judgment for the defendants, holding that the treatment at issue amounted, at most, to medical malpractice rather than the sort of deliberate indifference needed to establish a constitutional claim.  We agree and affirm.

I.

Grose entered a voluntary "Boot Camp" in November 2004, in an effort to shorten her state-prison term.  On November 19, 2004, she tripped and fell on both knees while descending from an

upper bunk. She immediately experienced pain and swelling in her knees. Grose requested medical treatment that morning, and walked to the Camp's medical facility around midday. Jane Burch, a physician's assistant, treated her. Grose complained of severe knee pain. (Grose also alleges that she told Burch about her fall, which we credit here, though Burch denies it.) Burch examined Grose and diagnosed her with mild overuse syndrome, a common condition at Boot Camp. Burch prescribed an anti-inflammatory and a lower bunk for Grose, and otherwise allowed her to resume normal activities. Burch did not order any x-rays.

Grose returned to Burch on November 29, complaining of knee and ankle pain. Burch examined her, again diagnosed overuse syndrome, and put her on "medical bed," which exempted Grose from Boot Camp activities. Burch examined Grose again on December 3 and allowed her to resume normal activities, though Burch still diagnosed her with overuse syndrome.

Grose returned to the medical facility on December 8, complaining of a possible blood clot in her leg. Burch tested her for deep vein thrombosis, prescribed an antibiotic, and returned Grose to medical bed. On December 10, Grose saw Peter Watson, a nurse practitioner, complaining of severe leg, knee, and foot pain. Watson observed that Grose was walking with a limp, had bulge signs on both knees, and had shin plaques. He ordered knee x-rays, suspecting that Grose had arthritis.

The x-rays were taken on December 15, and revealed knee fractures (i.e., bilateral tibial plateau fractures). Dr. Judith Howze told Grose to return the next day for an appointment with an orthopedic specialist. Howze then completed a form to request an urgent, in-person appointment with Kabindra Mishra, an orthopedic surgeon. At Howze's request, however, Mishra reviewed the

x-rays the same day they were taken. He noted the fractures, requested a CT scan, and recommended that Grose be placed on non-weight-bearing status for four weeks. Having done so, he directed that Grose see him in four weeks rather than the next day. Later that same day, Grose was medically terminated from Boot Camp and transferred to the Robert Scott Correctional Facility.

Gopal Singhal, a physician's assistant, met with Grose at the correctional facility the next day. He prescribed an anti-inflammatory for Grose and noted that she had been placed on non-weight-bearing status (i.e., in a wheelchair) for the next six to eight weeks. Grose claims (though Singhal denies) that he promised her an orthopedic appointment the next day.

The orthopedic appointment, with Mishra, came four weeks later, on January 13, 2005—which is what Mishra had directed after reviewing the x-rays. During that appointment, Mishra ordered new x-rays and—after reviewing them—cancelled the CT scan as unnecessary. He ordered that Grose begin physical therapy and walking with a cane. He offered an "extremely guarded" prognosis, telling her that her joints would likely degenerate and that corrective surgeries might be necessary in the future. He said to return in four weeks for more x-rays. That appointment occurred on February 24. During it, Mishra informed Grose that, because of the initial delay in treatment, her knee fractures would result "in post-traumatic arthritis and deformity, and lack of function."

Grose had five knee surgeries (including replacements) by September 2007. She continues to suffer pain and functional limitations, which she contends could have been avoided had her fractures been treated promptly after her fall. She eventually sued under 42 U.S.C. § 1983, alleging the defendants violated the Eighth Amendment through misdiagnosis and delay in proper medical

treatment. She also alleged that Correctional Medical Services—a private corporation that had contracted with Michigan to provide certain healthcare services for state inmates—customarily provided inadequate medical care in the state's prisons, and did so for her. The district court granted summary judgment to all defendants.

This appeal followed.

## II.

We review the district court's grant of summary judgment *de novo*, drawing all reasonable inferences in favor of the nonmovant. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 476 (6th Cir. 2010). Summary judgment is appropriate where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

## A.

To prevail on her Eighth Amendment claims, Grose must prove that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The claim has objective and subjective components. The objective component requires proof of "a sufficiently serious medical need." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (internal quotation marks omitted). The subjective component requires proof "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (internal quotation marks omitted).

Ordinary medical malpractice does not satisfy the subjective component. "[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment.

-4-

When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (internal citations omitted).

We first consider the claims against Burch and Singhal. It is undisputed that Grose's fractured knees constituted a sufficiently serious medical need, which meets the objective component of her claim. The question, then, is whether there is proof that either of these defendants subjectively perceived and disregarded a substantial risk to Grose. *See Dominguez*, 555 F.3d at 550.

Grose argues that Burch's misdiagnoses and failure to order x-rays amounted to deliberate indifference. We disagree. The misdiagnoses were simply that; and the failure to order x-rays was their result. The district court was entirely correct to characterize these claims as ones for ordinary malpractice, which are not actionable under the Eighth Amendment. *See Comstock*, 273 F.3d at 703.

Moreover, there is no proof that Burch perceived Grose's ailment as anything other than overuse syndrome. Whether, as Grose alleges, Burch provided services beyond those technically authorized for physician's assistants under Michigan statutory law is, if at all relevant, certainly not sufficient for purposes of her constitutional claim: She needs proof of subjective disregard, and she does not have it. So both of these claims fail.

Grose next faults Singhal, another PA, for failing to broker an immediate appointment with an orthopedic doctor. But it is undisputed that Mishra—the doctor whom she would see—had reviewed Grose's x-rays the day before, put her in a wheelchair, and directed that she return in four

weeks. Singhal's failure to challenge that judgment and accelerate the appointment was negligent at most. The district court was right to grant him summary judgment.

B.

With the exception of Correctional Medical Services, the remaining defendants are supervisory officials. Grose claims that they failed to supervise and train Burch and Singhal, thereby contributing to violations of her Eighth Amendment rights. As shown above, however, there were no such violations; so these claims, which are derivative, fail. *See McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006) ("a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor").

The same is true for Grose's claim against Correctional Medical Services. For Correctional to be liable, Grose must identify some custom, policy, or procedure that caused a violation of her Eighth Amendment rights. *See Perez v. Oakland County*, 466 F.3d 416, 430 (6th Cir. 2006). She lacks proof of any such violation, so this claim fails as well.

The district court's judgment is affirmed.